UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALRELIO EVANS,

Plaintiff,

v.

CONNIE HORTON et al.,

Defendants.

Case No. 2:20-cv-134

Honorable Paul L. Maloney

______________________________/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983, 1985, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), §§ 2000cc to 2000cc-5. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will drop Defendants Corrigan, Solomon, Clark, Bigger, McLean, Calder, McDonald, Reid-Goldberg, Otten, Picotte, Greenleaf, Gould, Trestrail, Batho, Woodard, Lumsden, Hansen, Portice, Meehan, Unknown Parties #1, Unknown Parties #2, Stranaly,

Payment, Cicco, and Wellman under Rule 21 because they are misjoined. The Court will further dismiss Plaintiff's First Amendment Right to Redress Grievances claim, § 1985 conspiracy claim, and RLUIPA claim for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF staff: Warden Connie Horton; Assistant Deputy Warden Unknown Corrigan; Assistant Residential Unit Supervisors Unknown Solomon and Jeffrey Clark; Lieutenant Unknown Bigger; Classification Directors M. McLean, M. Calder, J. McDonald, and S. Reid-Goldberg; Assistant Librarian Unknown Otten; Chaplain David M. Rink; Corrections Officers Charles Picotte, Unknown Greenleaf, N. Gould, Unknown Trestrail, Unknown Batho, Unknown Woodard, Unknown Lumsden, C. Hansen, Unknown Portice, and Unknown Meehan; Nurses Ressie Stranaly, Amber C. Payment, and Unknown Cicco; Dietitian Kelly Wellman; Mailroom Staff Unknown Parties #1; and Health Care Staff Unknown Parties #2.

Plaintiff's allegations cover a series of discrete events from July 2018 to January 2020, involving the 27 Defendants to varying degrees. In his first allegations, Plaintiff alleges that Horton and Rink refused several of Plaintiff's requests to practice as a Jehovah's Witness. Horton and Rink have allegedly denied Plaintiff's requests to attend weekly services under the "Rule of

5" requirement.[1] Plaintiff further alleges that he is unable to engage in required weekly Bible study, and his cell does not provide an adequate alternative because he encounters distractions and opposition from other prisoners. He also alleges that Buddhists have been permitted to attend services alone even though Jehovah's Witnesses have not. Plaintiff has allegedly been permitted to practice in group study at other prisons despite having fewer than five individuals actively practicing as Jehovah's Witnesses. Plaintiff alleges that his allegations give rise to a Free Exercise claim and a Right to Redress of Grievances claim under the First Amendment, an Equal Protection Clause claim under the Fourteenth Amendment, a RLUIPA claim, and a § 1985 conspiracy claim.

The remainder of the complaint alleges misconduct by Defendants related to the following: Plaintiff's legal mail; Plaintiff's access to his religious and legal property; Plaintiff's requests for photocopies related to his lawsuits; Plaintiff's access to the law library; Plaintiff's belief that a prison employee had sexually harassed him; alleged retaliatory reports of Plaintiff's misconduct; the sanitary condition of Plaintiff's cell; Plaintiff's hunger strike; Plaintiff's access to his medications; and Plaintiff's indigency status within the prison.

Plaintiff seeks declaratory and injunctive relief and damages.

## II. Misjoinder

Plaintiff joins 27 Defendants, connecting a series of discrete events during the period from July 2018 to January 2020. At this juncture, the Court must review whether Plaintiff's claims are misjoined.

[1] Under MDOC policies, a prison is relieved from providing group religious services if fewer than five prisoners in the same security level actively practice that religion. *See* MDOC Policy Directive 05.03.150, ¶ V, https://www.michigan.gov/documents/corrections/05_03_150_Internet_682693_7.pdf

**A. Improper Joinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*,

661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved[;] and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004) (discussing purpose of PLRA). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s]

> but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Further, Plaintiff's allegations of a civil conspiracy fail to establish that his claims arise from the same transaction or occurrence. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at

695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. This Court need not accept legal conclusions as true. *See Heyne v. Metro. Nashville Pub. Sch.*, 665 F.3d 556, 564 (6th Cir. 2011); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). Legal conclusions that are "masquerading as factual allegations" will not suffice to state a claim. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009)). Plaintiff alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete occurrences over a period of time involving numerous individual URF staff members. He supports his conspiracy claim only with an attenuated inference arising out of the fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 557. Although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only

compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Twombly*, 550 U.S. at 557.

In light of the far more likely probability that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff's conclusory allegations fail to state a plausible claim of conspiracy. Under these circumstances, to allow Plaintiff to proceed with these improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be meritless or frivolous.

Therefore, the Court therefore will look to Plaintiff's first listed Defendant and the first set of clear factual allegations against that Defendant to determine which portion of the action should be considered related. Defendant Horton is the first identified Defendant in the caption of the complaint (ECF No. 1, PageID.1), the list of Defendants (*id.*, PageID.7), and the factual allegations (*id.*, PageID.14). Plaintiff's earliest allegations assert that Defendants Horton and Rink refused to allow Plaintiff to attend weekly services as a Jehovah's Witness. Further, Plaintiff's only allegations against Defendant Horton—other than those conclusory allegations of conspiracy—relate to the refusal to allow Plaintiff to attend services. Plaintiff's allegations connect no other Defendant to the first transaction or occurrence involving Plaintiff and Defendant Horton other than Defendant Rink. As a result, none of the Plaintiff's claims against other Defendants is transactionally related to Plaintiff's first claim involving Defendant Horton. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B).

**B. Remedy**

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options:

(1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich*., 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. §§ 1983, 1985 and RLUIPA. For civil rights suits filed in Michigan under these provisions, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2,

1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's factual allegations against Defendants other than Horton and Rink have occurred since July 2018, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Accordingly, the Court will drop Plaintiff's claims against Defendants Corrigan, Solomon, Clark, Bigger, McLean, Calder, McDonald, Reid-Goldberg, Otten, Picotte, Greenleaf, Gould, Trestrail, Batho, Woodard, Lumsden, Hansen, Portice, Meehan, Unknown Parties #1, Unknown Parties #2, Stranaly, Payment, Cicco, and Wellman because they are misjoined and not at risk of being time-barred. The Court will dismiss without prejudice Plaintiff's complaint against them.

**III. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV. First Amendment

Plaintiff alleges that Horton's and Rink's refusal to allow him to attend weekly services violated his First Amendment right to freely exercise as a Jehovah's Witness. Plaintiff further alleges that Horton and Rink violated his First Amendment right to redress grievances.

### A. Free Exercise

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states). While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See*

*O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. are there alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is

satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a First Amendment Free Exercise claim against Defendants Horton and Rink.

**B. Right to Redress Grievances**

Plaintiff alleges that Defendants Horton and Rink deprived him of his First Amendment right to pursue grievances. However, Plaintiff has failed to allege how Horton or Rink interfered with his ability to file grievances or to pursue the grievance process. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

Moreover, even if Horton or Rink had taken action to interfere with Plaintiff's grievance process, prisoners have no protected right to file a grievance or successfully complete the grievance process, either under the First Amendment or the Due Process Clause. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*,

81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Further, while the First Amendment's petition clause prevents a government from preventing a citizen from seeking redress of his grievances, "[a] prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the

interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim for interfering with his pursuit of grievances.

## V. Equal Protection

Plaintiff appears to further allege that Defendants application of the "Rule of 5" requirement against Plaintiff and other Jehovah's Witnesses, but not against those who practice Buddhism, violates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a Fourteenth Amendment Equal Protection claim against Horton and Rink.

## VI. RLUIPA

Plaintiff further alleges that Horton and Rink violated rights provided to him by RLUIPA.

RLUIPA, 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

However, RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities. *Haight*, 763 F.3d at 569. Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.").

Moreover, a plaintiff cannot use § 1983 to get damages that RLUIPA does not provide. While § 1983 authorizes individuals to sue to enforce both the "rights, privileges, or immunities secured by the Constitution *and laws*," *id.* (emphasis added), the question whether § 1983 allows a person to enforce a federal statute turns on "whether Congress intended to create an 'individually enforceable right' and whether Congress wanted the statute to provide the exclusive remedy." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019) (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120–21 (2005)). The Sixth Circuit squarely has held that, because RLUIPA creates an individually enforceable right and an express cause of action that precludes damages, the statute demonstrates a congressional intent to preclude using § 1983 as a back door to such damages. *Id.*

Further, Plaintiff is no longer confined at URF. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v.*

*Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that injunctive relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the Plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96. Plaintiff is now confined at MRF. Defendants are not employed at that facility. Therefore, Plaintiff's request for injunctive or declaratory relief is now moot.

**Conclusion**

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that Defendants Corrigan, Solomon, Clark, Bigger, McLean, Calder, McDonald, Reid-Goldberg, Otten, Picotte, Greenleaf, Gould, Trestrail, Batho, Woodard, Lumsden, Hansen, Portice, Meehan, Unknown Parties #1, Unknown Parties #2, Stranaly, Payment, Cicco, and Wellman are misjoined in this action. The Court will dismiss Plaintiff's complaint against them without prejudice. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Right to Redress Grievances, conspiracy, and RLUIPA claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment Free Exercise and Fourteenth Amendment Equal Protection claims against Defendants Horton and Rink remain in the case.

An order consistent with this opinion will be entered.

Dated: November 13, 2020

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge